HENRY W. LEEDS, APPELLANT, v. WILLIAM ALTREUTER
ET AL., RESPONDENTS.

Argued November 27, 1912—Decided June 18, 1913.

1. *Pamph. L.* 1902, *p.* 284, confers power upon Atlantic City to pass an ordinance to license and regulate the sale of malt, spirituous, vinous and intoxicating liquors. *Held*, that in the ordinance passed by the city council for that purpose, it was not necessary to include the requirements of the provisions of the Inn and Tavern act, regarding the possession by the applicant of beds and provender in the place to be licensed.

2. Since the passage of chapter 43 of the laws of 1889, known as the "Werts act." and the passage of the so-called "Bishops' act" (*Pamph. L.* 1906, *p.* 203), it is competent for the city council of Atlantic City, under the power to license reposed in it by the act of 1902, to prescribe by ordinance the conditions and qualifications necessary to secure a license to sell intoxicating liquors.

On error to the Supreme Court.

For the prosecutor, *Charles S. Moore* and *Charles C. Babcock.*

For Altreuter, *Bolte & Sooy.*

For Atlantic City, *Harry Wootton.*

The opinion of the court was delivered by

MINTURN, J. The validity of two licenses to sell intoxicating liquors, granted by Atlantic City to the defendants, Collotty and Altreuter, was attacked upon writs of *certiorari.*

The licenses were granted over the remonstrances filed by the prosecutor, and after hearing upon the writs before Mr. Justice Garrison, the Collotty license was set aside, and that issued to Altreuter was sustained.

The writ of error in this court brings these adjudications before us for review. Since Collotty has made no effort to bring his appeal to argument, it is not before us.

The only mooted questions presented to us are those contained in the Altreuter appeal. In that case the Supreme

Court held, as a fact, that the petition was regular in form, and that the city council committed no error in its decision in passing, as it did, upon the qualifications of the necessary number of recommenders, upon whose qualifications the jurisdiction of the council depended.

That result is attacked upon various grounds presented in the reasons assigned for reversal. It is said that the ordinance of Atlantic City, approved June 22d, 1911, under the terms of which the license was granted is invalid and *ultra vires.*

The act under which the city is governed (*Pamph. L.* 1902, *p.* 284), provides, *inter alia,* in its twentieth section that "the city council shall be vested with full and exclusive power to license or prohibit the sale of malt, spirituous, vinous and all intoxicating liquors, within such city, and by ordinance to regulate and prescribe the terms and conditions upon which licenses shall be granted, the restrictions and limitations imposed, and the fees to be paid therefor."

The twenty-first section provides that "in granting licenses under the provisions of this act, the form of the application and mode of procedure now or hereafter prescribed for the granting of licenses to sell vinous, malt or spirituous liquors, and all intoxicating drinks by the general laws of this state applicable thereto, when not inconsistent with the provisions of this act, shall be observed."

It is insisted by the prosecutor that under the language of these sections of the act, the applicant for a license to sell spirituous, vinous or malt liquors must frame his application to conform to the law regarding the licensing of inns and taverns, by showing that he has at least two spare beds in the place to be licensed, and in other respects that he meets the statutory requirement regarding stabling accommodations, &c., incident to the ordinary management of the inn or tavern.

We are unable to take that view of this legislation. We concede, wherever conditions warrant their application by the licensing body, that the provisions of the Inn and Tavern act still subsist in all their effectiveness. *Cope* v. *Somers*

*Point,* 44 *Vroom* 376; *Sayre* v. *Board of Excise,* 52 *Id.* 79; *Johnson* v. *Wentz, Id.* 85; *Breese* v. *Winters,* 48 *Id.* 255.

We, however, conceive the fact to be that under changed social conditions, peculiar to municipalities and thickly settled communities, the requirements of that act were in the main inapplicable and unworkable, and subserved no beneficial public requirement which could be said to be within the legislative purpose at the period of their inception.

The Inn and Tavern act was the product of conditions to which modern urban life is a comparative stranger, and had as its prime concern the welfare, convenience and comfort of the wayfarer and traveler upon the highways of the state, in an era when the stage coach was the necessary concomitant of the wayside inn; when the realization of the rapid transportation over continents of man and beast upon highways of steel was a dream of social life, fitted to be chronicled only in Utopia, or in Lilliput: *tempora mutantur et nos mutamur in illis.*

Recognizing this change, legislation for over twenty years past has dealt with the subject *sub judice* from a new and modern point of view.

The Werts act (*Pamph. L.* 1889, *ch.* 43) and the Bishops' act (*Pamph. L.* 1906, *p.* 203), and the numerous amendatory and supplementary acts contained in the Compiled Statutes (*vol.* 3, *p.* 2888), creating excise departments in cities of the various classes, and dealing with the subject in boroughs and townships from the standpoint, not of inns and taverns, but of saloons, restaurants, billiard, pool rooms and bowling alleys, manifests that in those political subdivisions at least the provisions of the later legislation, under the legislative conception of the changed order of things was fitting and requisite.

This distinction and differentiation is emphasized in *Meehan* v. *Excise Commissioners,* 46 *Vroom* 557, where this court passed upon the constitutionality of this legislation in an opinion by Chancellor Pitney.

Quite manifestly, therefore, this legislation concedes to the city the power to pass the ordinance in question, or if

the public needs in the judgment of the council required it, to so mould an ordinance as to make it conform to the provisions of the Inn and Tavern act. Such in effect was the adjudication in the Supreme Court in *Leeds* v. *Atlantic City*, 52 *Vroom* 231, and *Ellis* v. *Board of Excise*, 30 *Id.* 151.

The council having exercised the power thus conceded, it was clearly within their power to prescribe the form of the application for a license, and to impose, as they have done, such reasonable conditions and qualifications as might seem to be necessary in the public interest.

Nor do we observe force in the contention that the application so formulated does not comply with the 'requirements of the ordinance. It is sufficient to say that it manifests a substantial compliance with those requirements, for we must observe that in matters of this nature it was not within legislative contemplation to exact from the ordinary citizen, to whose hands, in actual practice, the drawing of such documents is usually consigned, that nicety and exactness of legal expression and statement which is presumed to be impregnable to legal criticism.

We think, also, that there was sufficient evidence in the case from which the Supreme Court might reasonably infer, as it has, that the requisite number of qualified recommenders signed the application, and under such circumstances we are not called upon to review such a finding. *Moore* v. *Galupo*, 4 *Robb.* 801.

But, in any event, our examination of the testimony has led us to concur in the conclusion reached by the Supreme Court, that out of fifteen names signed to the application, at least twelve possessed the necessary qualifications to bring themselves within the requirements of the statute and the ordinance.

Finding no error in the record below, the judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, JJ. 7.

*For reversal*—THE CHANCELLOR, TRENCHARD, JJ. 2.